Below is an opinion of the court.

_David W. Hercher_
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

THE DISTRICT OF OREGON

| | |
|---|---|
| In re | |
| **Agua Holdings, Inc.**, fka PPV, Inc., aka AHI, | Case No. 19-34517-dwh11 (Lead Case) |
| Debtor. | |
| **David Burns**, an individual, | Adversary Proceeding No. 23-03003-dwh |
| Plaintiff, | |
| v. | MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO REMAND |
| **James Thuney,** an individual, and **Joe Thuney,** an individual, | |
| Defendants. | |

## I.    Introduction

This action was removed from the Multnomah County Circuit Court by

defendants, James and Joe Thuney, who filed a notice of removal in the

bankruptcy court, resulting in the opening of this bankruptcy court adversary

Page 1 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO etc.

proceeding. The primary asserted basis for removal is that this action is related to the chapter 11 bankruptcy case of Agua Holdings, Inc., pending in the bankruptcy court as Case No. 19-34517.

The following motions are pending:

- Motion to intervene, filed by Agua;[1]

- Motion to dismiss, filed by the Thuneys;[2]

- Motion for jury trial filed by plaintiff, David Burns;[3] and

- Motion to remand, also filed by Burns.[4]

For the reasons that follow, I conclude that there is no bankruptcy jurisdiction over this action. I will make a report and recommendation to the district court that a district judge consider whether this action was alternatively removed to the district court as a diversity action. If the district judge determines that this action has not been removed to the district court and does not remand it, then I will grant the remand motion and deny the other motions as moot.

## II.     Facts

On December 10, 2019, Agua, then known as PPV, Inc., filed its chapter 11 petition in the bankruptcy court.[5]

---

[1] ECF No. 3.
[2] ECF No. 4.
[3] ECF No. 10.
[4] ECF No. 12.
[5] No. 19-34517 ECF No. 1.

Page 2 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO etc.

On April 21, 2021, the bankruptcy court confirmed the chapter 11 plan filed by Agua and its subsidiary, Bravo Environmental NW, Inc.[6]

On December 16, 2022, Burns filed this action in state court.[7] It includes the allegation that, in a prior Multnomah County Circuit Court action, No. 17CV30250, the court ordered that PPV buy Burns's shares in PPV.[8] The Thuneys attached to their remand motion a copy of the purchase order.[9] The findings of that order make no reference to the guaranties that are the subject of the removed action, but the order does include a finding that the Thuneys, as controlling shareholders of PPV, engaged in oppressive conduct of Burns by terminating dividend payments to him and demanding that he guarantee a creditor of PPV.[10]

On December 27, 2022, the Thuneys accepted service of the complaint in this action.[11]

On January 15, 2023, the Thuneys filed the notice of removal in the bankruptcy court.[12]

## III.  Motion to remand

Burns moves to remand this action to the state court under 28 U.S.C. § 1452(b) for lack of subject-matter jurisdiction or, alternatively, on equitable

---

[6] No. 19-34517 ECF No. 515.
[7] ECF No. 1-1
[8] ECF No. 1-1 at 2 ¶ 5.
[9] ECF No. 4, Ex. 1.
[10] ECF No. 4, Ex. 1 at 2 ¶ 1.
[11] ECF No. 1-2, 1-3.
[12] ECF No. 1.

Page 3 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO etc.

grounds. The jurisdictional question is the most important, and I will start with it.

### A.    *Bankruptcy jurisdiction*

I will break the bankruptcy-jurisdiction issue down according to the jurisdictional statute, 11 U.S.C. § 1334(b), which gives the district courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." That jurisdiction is exercised by the bankruptcy court by referral from the district court.[13]

As authority for removal, the notice of removal invokes primarily 1452(a). Removal under that section is possible only if the state-court action was within the district court's jurisdiction under 1334(b), which means that the action must satisfy one of three requirements. It must (1) arise under title 11 of the United States Code (the Bankruptcy Code), (2) have arisen in the bankruptcy case (here, Agua's), or (3) be related to the bankruptcy case. The notice of removal asserts that this action is related to Agua's bankruptcy case,[14] but it does not assert that this action arises under the Bankruptcy Code or in Agua's bankruptcy case.

### 1.    Arising-under bankruptcy jurisdiction

Under the Ninth Circuit's 2010 decision in *Battle Ground Plaza, LLC v. Ray (In re Ray)*, "[a] matter 'arises under' the Bankruptcy Code if its

---

[13] 28 U.S.C. § 157(a); LR 2100.
[14] ECF No. 1-1 at 2.

Page 4 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO etc.

existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code."[15]

Whether this action arises under title 11 is the easiest to answer: it doesn't. Burns's complaint makes no reference to any specific federal statute.[16] On page 4, he demands "post-petition interest pursuant to applicable bankruptcy law," but he doesn't explain why bankruptcy law would have anything to do with postjudgment interest, and this reference is not enough to make the entire action arise under title 11. The complaint occasionally refers to events that took place in the bankruptcy case, but it neither mentions nor appears to rely on any provision of bankruptcy law for relief.

The Thuneys' response to the remand motion[17] doesn't discuss arising-under jurisdiction, but Agua's[18] does. Agua argues that "a plaintiff cannot avoid federal court simply by omitting a necessary federal question in the complaint; in such a case the necessary federal question will be deemed to be alleged in the complaint."[19] That statement is correct as a matter of law, but Agua doesn't identify any necessary federal question that Burns omitted from the complaint, and I can find none.

---

[15] 624 F.3d 1124, 1131 (9th Cir. 2010).
[16] ECF No. 1-1 at 1–4.
[17] ECF No. 21.
[18] ECF No. 24.
[19] ECF No. 24 at 8, quoting 15 Moore's Fed. Prac. ¶ 103.43.

Page 5 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO etc.

Agua argues that "Plaintiff's claims necessarily turn on the questions of federal law involving the scope of property of the estate and the effect of this Court's Confirmation Order."[20] I disagree. Agua's motion to intervene and the Thuneys' defenses asserted in their motion to dismiss raise those federal questions, but Burns's complaint does not.

This action does not arise under title 11.

### 2. Arising-in bankruptcy jurisdiction

In the Ninth Circuit's 2010 decision in *Ray*, the court held that—

> [a] proceeding "arises in" a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code.[21]

In *Ray*, the debtor filed an action to determine the preclusive effect on postbankruptcy state-court litigation of a bankruptcy court's order approving a sale under 11 U.S.C. § 363. The state-court action was filed by a plaintiff that held a first-refusal right in property that had been sold in the bankruptcy case. In state court, the plaintiff argued that the debtor, the buyer, and others had violated its first-refusal right by failing to disclose one of the terms of the sale. The state court "remanded" to the bankruptcy court to determine whether the 363 sale order barred the claims asserted in the state-court action. The Ninth Circuit concluded that the bankruptcy court did not have jurisdiction under any prong of 1334(b), including arising-in

---

[20] ECF No. 24 at 8.
[21] *In re* Ray, 624 F.3d 1124, 1131 (9th Cir. 2010).

Page 6 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO etc.

jurisdiction. That the action was based on a transaction that happened to take place in bankruptcy, but that could have occurred elsewhere, is insufficient to support arising-in jurisdiction; instead, a transaction must be "an administrative matter unique to the bankruptcy process that has no independent existence outside of the bankruptcy court and could not be brought in another forum."[22]

In the Ninth Circuit's 2013 decision in *In re Wilshire Courtyard*,[23] the court held that the bankruptcy court lacked arising-in jurisdiction over a dispute between nondebtors regarding the tax consequences of a transaction that had been approved as part of the debtor's chapter 11 plan. "Had [the debtor] negotiated a similar deal with its creditors outside of bankruptcy, the same dispute with [the taxing agency] over whether to categorize the income as cancellation of debt income or capital gains may have arisen."[24]

Although *Wilshire* went on to find jurisdiction for a different reason, discussed in part III.A.3 below, the decision illustrates the strictness with which the arising-in jurisdiction is construed. There, even though the transaction whose legal consequences was in dispute had occurred in a chapter 11 case, the fact that it could have occurred outside of bankruptcy meant that there was no arising-in jurisdiction.

---

[22] *Ray*, 624 F.3d at 1131.
[23] 729 F.3d 1279 (9th Cir. 2013).
[24] 729 F.3d at 1286–87.

Page 7 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO etc.

The heart of Burns's complaint[25] is the paragraph 9 allegation that the Thuneys, as controlling shareholders of PPV (Agua's predecessor), caused PPV and its subsidiary, Bravo, to guarantee loans to a third party for the Thuneys' benefit and to the detriment of Burns, who at the time was a PPV shareholder. The complaint does not say when the guaranties were issued, but it implies that they were issued before the bankruptcy petition was filed. In the Thuneys' motion to dismiss, they make clear that they understand the complaint to allege that the guaranties preceded the petition date.[26] The complaint goes on to narrate other events, which did take place during the bankruptcy and that Burns claims contributed to his injury. But the alleged bad acts that are the core of the complaint not only were not unique to bankruptcy, they apparently didn't occur during the bankruptcy at all.

This action did not arise in Agua's bankruptcy case.

### 3.      Related-to bankruptcy jurisdiction

Under Ninth Circuit case law, related-to jurisdiction is defined in different ways before and after confirmation of a chapter 11 plan. Before confirmation, a claim is related to the bankruptcy case if it could "conceivably have any effect on the estate being administered in bankruptcy."[27]

---

[25] ECF No. 1-1 at 3 ¶ 9.
[26] ECF No. 4 at 4.
[27] Great Western Savings v. Gordon (*In re* Feitz), 852 F.2d 455, 457 (9th Cir. 1988), quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994(3d Cir. 1984).

But after confirmation, the inquiry changes. In the Ninth Circuit's 2005 decision in *In re Pegasus Gold Corporation*, the court adopted the "close nexus" text for postconfirmation related-to jurisdiction, under which there must be a close nexus between a postconfirmation claim and "the plan or proceeding."[28] There, the close-nexus test was satisfied there because the claims "and the attendant remedies sought . . . could affect the implementation and execution" of the confirmed plan." The court described the close-nexus test as "more limited" than the "conceivable effect" test,[29] which is appropriate given the general understanding that a bankruptcy court should not keep reorganized debtors under "indefinite tutelage."[30]

In the Ninth Circuit's 2006 decision in *Sea Hawk Seafoods, Inc. v. Alaska (In re Valdez Fisheries Development Association, Inc.)*, the court described *Pegasus* as finding a close nexus "where the outcome of [postconfirmation] claims could affect the implementation and execution of the Plan."[31]

But in the Ninth Circuit's 2013 decision in *In re Wilshire Courtyard*,[32] the court rejected as "too narrow" the notion that the close-nexus test requires that a postconfirmation proceeding have "some demonstrable effect on the debtor or the plan of reorganization."[33] Although reaffirming that a close

---

[28] State of Montana v. Goldin (*In re* Pegasus Gold Corp.), 394 F.3d 1189, 1194 (9th Cir. 2005).
[29] *Pegasus*, 394 F.3d at 1194.
[30] *See* 8 Collier on Bankruptcy ¶ 1142.04.
[31] 439 F.3d 545,548 (9th Cir. 2006).
[32] 729 F.3d 1279 (9th Cir. 2013).
[33] *Wilshire*, 729 F.3d at 1288–89.

Page 9 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO etc.

nexus exists where a postconfirmation matter "affect[s] the interpretation, implementation, consummation, execution, or administration of the confirmed plan,"[34] *Wilshire* found jurisdiction in part based on a determination that "the ultimate merits question depends in part on the interpretation of the confirmed Plan."[35] Considered alone, that holding of *Wilshire* seems to reverse the *Pegasus* and *Valdez* holdings that a close nexus exists where the resolution of the dispute could affect the implementation and execution of the plan. But because *Wilshire* also relied on three other grounds to support jurisdiction[36] and didn't state whether the four grounds are dependent or independent, it's unclear whether a close nexus for postconfirmation related-to jurisdiction could be based alone on the fact that resolution of a dispute required plan interpretation.

The question, then, is whether *either* of the two propositions is true: the outcome of Burns's claim will affect the implementation of the plan *or* the plan will have an effect on the outcome of Burns's claim.

The answer to both questions is no.

### (a)    *Effect of claim on implementation of plan*

The outcome of Burns's claim against the Thuneys will be that they either will be liable to him or that they will not. The Thuneys do not explain how either result would have any effect on the plan.

---

[34] *Wilshire*, 729 F.3d at 1289, quoting *Pegasus*, 394 F.3d at 1194.
[35] *Wilshire*, 729 F.3d at 1289.
[36] *Wilshire*, 729 F.3d at 1290–92.

Page 10 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO etc.

Burns has disclaimed the right to assert, based on the present version of the complaint, any derivative claim, arguing that his claim is only direct. To support his argument that he's not currently asserting a derivative claim, he points to the absence from the complaint of two elements that Oregon Revised Statutes § 60.261(2) requires in a complaint asserting a derivative claim: (1) that the plaintiff brings the complaint "in the right of" the corporation and (2) that the plaintiff alleges with particularity any demand made to obtain action by Agua's directors and either that the demand was refused or ignored or why none was made.

The Thuneys challenge whether the factual allegations of the complaint support a direct claim, rather than a derivative one. But if the complaint's allegations would not support a direct claim, then Burns will lose on the merits. And if the allegations would support a direct claim, it's one over which there's no 1334 jurisdiction, and Burns is entitled to litigate that claim in state court. So, I need not decide whether the factual allegations of the complaint support a direct claim.

At argument, Burns both disclaimed any present derivative claim and reserved the right to amend the complaint to assert a derivative claim if warranted by the circumstances. But I must evaluate the presence of subject-matter jurisdiction over this action based only on the allegations of the present complaint, not those of a possible future one. And if in a future complaint Burns asserts a new or revised claim for which jurisdiction would

lie under 1334, nothing in 1452(a) would prevent the Thuneys from re-removing this action.

### *(b)    Effect of plan on resolution of claim*

It makes a little more sense to argue that the plan might play a role in the resolution of Burns's claims, because Agua suggests that the plan makes Agua, rather than Burns, the proper plaintiff. Yet the plan does not appear to have any bearing on whether Agua or Burns is the real party in interest.

The nub of the real-party-in-interest dispute is whether Burns's claim is truly a claim that is personal to him, rather than derivative of Agua's rights. The plan's revesting provision can shed no light on this question. If Burns is correct that the right he seeks to enforce is and always has been a direct claim, personal to him and not derivative of Agua's rights, then it was never property of the estate, it did not revest in Agua (because it never belonged to Agua in the first place), and it was not affected by the plan. If Agua is correct that Burns is actually asserting a right that belongs to Agua, then the claim was property of the estate and did revest—but still resolution of the claim wasn't affected by the plan, because the plan merely revested the claim in the entity that owned it before the petition date.

The Thuneys and Agua argue that the bankruptcy court has related-to jurisdiction based at least on the complaint's allegation in paragraph 8 that Agua, Bravo, and the Thuneys "have failed [to] make good faith efforts to sell

Bravo."[37] At argument, Burns argued that paragraph 8 is in the complaint only as background and not as an independent basis for relief. That argument is supported by complaint paragraph 10, which articulates a claim against the Thuneys for approving the guaranties in breach of their duty of good faith, fair dealing, and loyalty.

In Agua's motion to intervene, it cites three cases about treatment in bankruptcy of claims described as "derivative." The 1997 Ninth Circuit BAP decision in *CBS, Inc. v. Folks (In re Folks)*[38] and the 2004 decision of a Southern District of California district judge in *e-Realbiz.com, LLC v. Protocol Communications, Inc. (In re Real Marketing Services, Inc.)*,[39] appear to stand for the proposition that an action that belongs to a corporate debtor, and thus that could be asserted either by the corporation or as a shareholder-derivative action, becomes estate property. A shareholder-derivation action is simply one in which a shareholder stands in as representative of the corporation, so the action always belongs to the corporation. Bankruptcy doesn't add to that analysis; the only effect of bankruptcy is that the claim becomes estate property and can be asserted by the trustee. There could be a stay-violation issue if a shareholder attempts to represent the corporation to assert a claim that belongs to the estate, but otherwise it's the same analysis as outside of bankruptcy: the claim belongs to the corporation, and

---

[37] ECF No. 1-1 at 3 ¶ 8.
[38] 211 B.R. 378 (9th Cir. BAP 1997).
[39] 309 B.R. 783 (S.D. Cal. 2004).

shareholders can assert it only if the corporation fails to do so in its own name.

Here, Burns asserts a claim on his own behalf and not as representative of Agua. His theory is that the Thuneys, as majority shareholders, violated a duty that they owed to him personally as a minority shareholder, in the nature of an oppression claim, although he doesn't use that term. Whether he has actually identified a breach of any duty owed to him personally is a separate question, but he definitely is not asserting any claim in a representative capacity on behalf of Agua.

The third case Agua cited is the Second Circuit's 2014 decision in *Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*.[40] The Second Circuit has a peculiar doctrine, originating in the Johns Manville asbestos case, where claims that are "derivative or duplicative" of claims of the bankruptcy estate are deemed to be within the bankruptcy court's related-to jurisdiction.[41] That doctrine is unrelated to shareholder-derivative litigation. The *Madoff* decision is thus not relevant to whether Oregon law would consider Burns's claim as derivative or direct.

I conclude that this action is not related to Agua's bankruptcy case.

For all of the above reasons, there is no 1334(b) arising-in, arising-under, or related-to bankruptcy subject-matter jurisdiction over this action. Because

---

[40] 740 F.3d 81, 89 (2d Cir. 2014).
[41] *Id*. at 88.

bankruptcy court jurisdiction is only on referral from the district court,

neither court has jurisdiction over this action.

### B. *Equitable grounds for remand*

Section 1452(b) permits remand of an action removed under bankruptcy

jurisdiction "on any equitable ground."

The absence of bankruptcy jurisdiction over this action suffices to require

remand—unless there's a nonbankruptcy basis for federal jurisdiction. I thus

need not address whether there exist any nonjurisdictional equitable grounds

for remand.

## IV. Diversity jurisdiction; report and recommendation to district court

Although the primary authority that the Thuneys invoked for removal is

1452(a), in a footnote in the notice of removal they also invoke 28 U.S.C.

§ 1332(a), which gives district courts jurisdiction over diversity actions. The

footnote asserts that Burns, on one hand, and the Thuneys, on the other, are

"citizens of different states, and the claim involves more than $75,000,"

satisfying the 1332(a)(1) requirements for diversity jurisdiction. So far, Burns

has not disputed those fact allegations. Although not specifically invoked by

the Thuneys, 28 U.S.C. § 1441(a) permits removal to a federal district court of

an action of which the district courts have original jurisdiction, including a

diversity action.

Burns argues that the footnote's reference to 1332(a) does not constitute

notice of removal under 1441(a), as opposed to 1452(a). He points first to the

Page 15 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO etc.

primary text of the notice, which states that removal is "pursuant to

28 U.S.C. §§ 1452(a), 1334, [and] 157(a)."[42] He also points to the last sentence

of the footnote, which says that the Thuneys "reserve their right to file for

removal in district court should this Court decline jurisdiction." He argues

that the footnote is, at best, a prediction that the Thuneys would file a second

removal notice if this action is remanded based on lack of bankruptcy

jurisdiction.

At argument, the Thuneys asked that I treat the footnote as alternative

authority for the notice of removal already filed in the bankruptcy court.

To remove an action based on federal jurisdiction other than bankruptcy

jurisdiction under 1334, 28 U.S.C. § 1446(a) requires that a defendant file a

notice of removal in the district court for the district and division within

which the action is pending in state court. And 1446(b)(1) requires that the

notice be filed within 30 days after receipt by the defendant of a copy of the

initial pleading setting forth the claim on which the action is based. The

Thuneys accepted service of the complaint on December 27, 2022. Thus, if

this action is removable under 1332(a) and 1441(a), a second notice of

removal would be untimely.

I agree with Burns that there is no bankruptcy jurisdiction over this

action, and if that were the sole ground for removal, I would remand this

action now under the authority of 1452(b). But the Thuneys are entitled to a

---

[42] ECF No. 1 at 1–2.

decision on their alternate argument that removal is appropriate to exercise diversity jurisdiction. Because 28 U.S.C. § 157(a) permits the district court to refer to the bankruptcy court only matters over which the district court has bankruptcy jurisdiction under 1334, and there is no other source of a bankruptcy court's jurisdiction, the bankruptcy court lacks jurisdiction to determine whether the Thuneys' notice of removal filed in the bankruptcy court constitutes a notice of removal filed in the district court under 1441(a).

By contrast, a district judge could consider whether the Thuneys' notice of removal sufficed in form to remove this action under 1441(a). And a district judge could consider whether, in view of the bankruptcy court's status as a statutory unit of the district court,[43] the Thuneys' filing of the notice of removal in the bankruptcy court also constituted filing it in the district court under 1446(a). If the answer to both questions is yes, a district judge could consider this action to have been removed to the district court under 1441(a) and then proceed to administer this action, including the other pending motions, as a district court action. If the answer to either question is no, the district court could either remand this action or notify me of its decision, after which I would remand it.

## V.     Other motions

Because I have determined that the bankruptcy court lacks jurisdiction over this action, and any jurisdiction is only in the district court under

---

[43] 28 U.S.C. § 151.

1332(a), I will not now consider the other pending motions. If I remand this action, I will then deny the other motions as moot.

Even though I have not granted Agua's intervention motion, I have considered all its papers and argument.

## VI.    Conclusion

I will make a report and recommendation to the district court, recommending that—

- a district judge consider whether the filing of the notice of removal sufficed to remove this action to the district court under 1441(a);

- if the district judge determines that this action has not been removed to the district court under 1441(a), that the district court administer this action, including the other pending motions, as a district court action; and

- if the district judge determines that this action has not been removed under 1441(a), that the district court either—

  o  remand this action to state court or

  o  notify me, after which I will do so and then deny the other motions as moot.

### #